### J. G. SCOTT v. COMMONWEALTH, ET AL.

**Suit on Officer's Bond—Release of Sureties.**

Where in a suit on an officer's bond one surety has been released pursuant to the provisions of a statute, such a release will not have the effect to release other sureties.

**Sheriff's Failure to Return Execution.**

A sheriff is not excused from making his return on an execution by showing diligence in endeavoring to collect. No matter what his diligence may have been he and his sureties are liable unless it may be shown that the execution defendant was without property in the county subject to seizure under the execution.

**Pleading.**

In a suit against a sheriff and his sureties on his bond, the defendants cannot prove that a failure to return an execution was the result of accident or oversight, when such a defense, if it be one, has not been pleaded.

**Sheriff's Liability.**

Where executions come into the hands of the sheriff and he failed without a reasonable excuse to return them within thirty days after the return day, he and his sureties are liable for the amount thereof and thirty per cent. thereon, unless the execution defendants had no property in the county out of which any part of the executions could have been made.

**Measure of Damages.**

> When a sheriff and his sureties are sued on account of the sheriff's
> failure to return executions, an instruction is erroneous which directs
> the jury, if they find for the plaintiff, to add interest on the sums
> named in the executions.

## APPEAL FROM TAYLOR CIRCUIT COURT.

### January 5, 1877.

OPINION BY JUDGE COFER:

The commonwealth of Kentucky brought this suit against J. G.
Scott, late sheriff of Metcalfe county, and the sureties in his official
bond to recover the amount of two executions issued from the
office of the Taylor Circuit Court in favor of the plaintiff, one of
them against Isaac Oaks and others for $250 and costs, and the
other against Isaac Oaks alone, for $10 and costs.

It was alleged that said execution, while in full force, came to
the hands of Scott; that the execution defendants then resided in
Metcalfe county and had sufficient estate therein, subject to execu-
tion, to satisfy said executions, and that they had been, or by the
use of ordinary diligence could have been, collected, but that the
sheriff had failed to pay over to the plaintiff, or to any one authorized
to receive it, the amount of said executions, or any part of the same,
and had, without reasonable excuse therefor, failed for more than
thirty days after the return day of said executions, to return them
or either of them to the office whence they issued.

The defendants denied that any part of either of said executions
had been, or could by any degree of diligence have been, collected.
They also averred that the sheriff, being unable to find any property
in his county subject to said executions, indorsed that fact on each
of them and placed them in an envelope directed to the clerk of the
Taylor Circuit Court, and deposited them in the post-office at the
time they were made returnable.

The sureties also averred that Merida Wilson was a cosurety
with them on the official bond of Scott, and that on the 4th day of
March, 1871, Wilson gave written notice to said Scott that he was
unwilling to remain longer bound on said bond; that thereupon, on
motion of said Wilson before the county court of Metcalfe county,
an order was made by said county court ruling and requiring said
Scott to appear before said court within ten days and give additional
security on said bond, which rule was served and returned; that
upon said Scott's failure to respond to said rule an order was made

by the court releasing Wilson from any further liability on said bond; and that afterwards the name of John H. Scott was signed to the bond, and his name was interlined and added to the order on the county court order book, approving and accepting the bond, to supply the place of the name of Wilson. The executions in question having been received by Scott, after the order releasing Wilson, and after the name of John H. Scott was signed to the bond and his name interlined on the order book, they relied upon these facts as discharging them from all further liability on the bond sued on.

A verdict and judgment having been rendered against Scott and all the sureties, except Wilson, this appeal is prosecuted to reverse that judgment. The appellants asked three instructions which were refused. In the first of the rejected instructions, which is marked "C," the court was asked to tell the jury that if it believed from the evidence Merida Wilson had been released, by an order of the county court, from all liability as surety on the sheriff's bond, it ought to find for all the sureties. In a previous instruction, asked by Wilson, and given by the court, the jury was told that he was released from all liability, and the effect of giving the instruction asked by appellants would have been to require the jury to find for them all, and consequently the instruction was properly refused unless the release of Wilson, if he was released, had the effect to release all the sureties.

The statute then in force (Secs. 1 and 2, Chap. 97, Rev. Stat.) provided that when a surety, for good cause, wished to be relieved from further liability as such, in the official bond of any officer, he might, by written notice to the officer, require him by a named day to appear and give a new bond, with other surety, before the court in which, or in whose clerk's office, the original was given or was kept, and that in case a new bond was given the surety should not be bound for any act of the principal thereafter. If the officer failed to give a new bond the statute declared that he should, by order of the court, be removed from his office.

The statute gave no authority for making an order such as was made releasing Wilson from further liability. It provided that if a new bond was given he should be released, and if no such bond was given the court should remove the sheriff from office, but did not declare what should be the result if neither of these things were done. It may therefore well be doubted whether Wilson did not continue liable. The notice is not copied into the record, nor does the record from the county court show that the court adjudged that

14

good cause was shown; but on the contrary it appears that the order requiring a new bond was made because the sheriff made default by failing to respond to the rule. The proceeding was therefore quite defective, if not void. *Lemon v. Peck,* 13 B. Mon. 393.

But even if Wilson was released, we think the other sureties were not released. If he was released it was the act of the law, and the sureties, when they signed the bond, did so subject to the right of each to be discharged in the manner in which Wilson was released, and if he was not released of course they have no ground of complaint. The court therefore properly held that the appellants were liable, if the case was made out in other respects, and properly refused instruction "C."

Instruction "D" was properly refused on more than one ground. By its terms the liability of the sheriff and his sureties would have been made to depend not upon the question whether the defendants in the execution had property in the sheriff's bailiwick out of which the whole or some part of the execution could have been made, but upon the question whether he used due diligence in endeavoring to collect the execution. The statute was and is now peremptory, and a sheriff or other like officer into whose hands an execution is placed to do execution thereof, who fails to return the same to the office whence it issued within thirty days after the return day of the same, without reasonable excuse for such failure, shall, with his sureties, be liable to the plaintiff in such execution for the amount thereof, and thirty per centum damages thereon and costs of recovery. But that rule does not apply where the defendant had no property in the county, out of which the execution or any part of it could have been made; but in such case the liability is for thirty per centum on the amount of the execution. Sec. 4, Art. 18, Chap. 36, Rev. Stat., and Secs. 5, 6, 7, Art. 17, Chap. 38, Gen. Stat.

The statute does not excuse the sheriff, or his sureties, for his failure to return the execution upon its being made to appear that he used due diligence to collect it. Diligence in endeavoring to collect is of no avail in such a case. No matter what his diligence in that respect may have been, he and his sureties will be liable except the defendant in execution was without property in the county subject to seizure under it.

Another objection to the instruction is that it authorized the jury to consider evidence tending to show that the sheriff had put the executions in an envelope directed to the clerk of the Taylor Circuit Court, but had by inadvertence and oversight neglected to put it in

the post-office. No such excuse was pleaded, and it could not therefore be considered by the jury. The statute authorized any officer having civil process in his hands, returnable to another county, to enclose it by mail, directed to the plaintiff, and provided that when so sent in proper time the officer should not be liable. The appellants attempted to make that defense to the complaint that there had been a failure to return the execution, and had no right without pleading it to rely upon the fact that the failure to return was the result of accident or oversight. Such a defense was not only inadmissible without being pleaded, but was inconsistent with the defense which was pleaded.

Instruction "E" would have submitted to the jury the work of deciding whether as matter of law the sureties of Scott were released, and was properly refused.

But the appellant's complain, and we think justly, of the instructions given by the court at the instance of the commonwealth. The first of these instructions directed the jury if they believed from the evidence that the defendants in the execution were good and solvent, and the sheriff, Scott, could by ordinary diligence have made the money out of them, and he delayed for thirty days after the return day to return the executions to the Taylor Circuit Court clerk's office without a reasonable excuse, they must find for the plaintiff the amount of the executions, with interest, to January 22, 1872, and thirty per cent. damages on said sum, and interest on the amount of said executions from said January 22, 1872, to the finding of their verdict.

It did not matter how "good and solvent" the execution defendants may have been, the appellant was not liable in this action unless the defendants, or some of them, had property in the county during the lifetime of the executions subject to levy and sale, out of which some part of the executions could have been made. This error may, however, have been cured by the subsequent part of the instruction, for when the whole is taken together the jury probably understood that they were only to find for the plaintiff in case that they found that the execution defendants were good and solvent, and also that the sheriff could have made the money out of them by ordinary diligence, and when so understood the error thus far was to the prejudice of the commonwealth. If the executions went into the hands of the sheriff while they were in force, and he failed, without reasonable excuse, to return them within thirty days after the return day, he and his sureties are liable for the amount thereof and

thirty per cent. thereon, unless the defendants in the execution had no property in the county out of which any part of the executions could have been made (*Goodrum v. Root,* 2 Met. 427), and the burden was on the sheriff and his sureties to prove that fact. *Johnson v. Bradley,* 11 Bush 666; *Mitcheson's Adm'r v. Foster,* 3 Met. 324. If the execution defendants had no property in the county subject to the executions, and the sheriff without reasonable excuse failed for more than thirty days to return them, then he and his sureties are liable for thirty per cent. on the amount due on the executions.

But the instruction was erroneous and prejudicial to the appellants in that it directed the jury, if they found for the plaintiff, to find interest on the amount of the executions. The judgments on which the executions issued bore no interest. Any recovery that may be had is in the nature of a penalty for the sheriff's neglect of duty, and neither he nor his sureties can be held liable in any event for more than the amount due on the execution and thirty per cent. thereon.

Instruction number two given for the appellee is also erroneous. It reads as follows: "No property is exempt from a fine." The small execution seems to have issued on a judgment for a fine, and the other upon a judgment on a forfeited bail bond. But the same property was exempt from seizure and sale under each of said executions that was exempt from executions in favor of private individuals.

The record does not show that it contains all the instructions given, and counsel for the appellee insists that this court cannot reverse for apparent error in the instructions before us, because we cannot know but such error was corrected by other instuctions given, but not embodied in the record. He cites *Vandever v. Griffith,* 2 Met. 425. That case does not sustain the position assumed. The single question decided in that case was that time not having been given at the term at which a judgment was rendered to reduce the exceptions to writing, the court below had no power at a subsequent term to sign, seal and enroll a bill of exceptions, and that this court would not consider a bill of exceptions made in that manner.

Instructions are no doubt, as counsel argues, to be considered as a whole, and it often happens that an inaccuracy in one instruction is cured by what is contained in another, and there may be cases in which this court would not reverse for slight error in the instructions appearing in the record, unless the record showed that it contained all the instructions. But no other instructions which the

court could have given could have cured some of the errors which we think were contained in the instructions given for the appellee in this case, unless such instructions had entirely withdrawn those before us, and we certainly cannot presume that was done. Instructions correctly expounding the law would have been repugnant to those given, and if such instructions were copied into the record then it would appear that the instructions were inconsistent with each other, and we would be compelled to reverse because of that fact.

Judgment *reversed* and cause remanded with instructions to award the appellant a new trial.

*Robinson, Leslie & Botts, for appellant.*

*P. B. Thompson, Jr., for appellees.*